IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ARGONAUT GREAT CENTRAL INSURANCE COMPANY**,

      Plaintiff,

   v.

**C&K MARKET, INC.; PAUL R. DANOFF; KIM L. DANOFF; AND THE DANOFF FAMILY TRUST 2000,**

      Defendant.

**Case No. 6:15-cv-01466-MC**

**OPINION AND ORDER**

MCSHANE, Judge:

      Plaintiff Argonaut Great Central Insurance Company ("Argonaut") and Defendants Paul Danoff, Kim Danoff, and the Danoff Family Trust 2000 (collectively "Danoff") filed cross motions for summary judgment to determine the availability of insurance coverage for a claim by Danoff for damages to a grocery store located at 330 Dakota Street in Sutherlin, Oregon (the Storefront). Because C&K Market, Inc. ("C&K), the named insured, did not suffer a covered loss under the policy, Danoff, the loss payee, may not recover under that policy. Danoff's motion for summary judgment, ECF No. 17, is DENIED, and Argonaut's motion for summary judgment, ECF No. 12, is GRANTED.

1 – OPINION AND ORDER

## **BACKGROUND**

This action arises out of a claim that Danoff filed as a loss payee under a Grocers Advantage Plus insurance policy purchased by C&K. C&K built the Storefront in 2001. In early 2003, C&K sold the Storefront to Crest Net Lease, Inc. ("Crest Net") and entered into a lease agreement with Crest Net. Danoff purchased the Storefront from Crest Net in October 2003 and assumed the existing lease agreement between C&K and Crest Net. Danoff did not inspect the Storefront before purchasing it. Nor did Danoff receive from Crest Net any inventory regarding what property, if any, came with the purchase. Lehner Decl. Ex. 5, 8, 10.

Under the lease, C&K was obligated to purchase an insurance policy naming Danoff as loss payee and C&K as the named insured. C&K purchased a Grocers Advantage Plus insurance policy (the Agreement) from Argonaut, which specified a policy period from Sept. 1, 2013 to Sept. 1, 2014.

During the policy period, C&K filed for Chapter 11 Bankruptcy and liquidated all assets in the store including portions of the building's HVAC system, plumbing, piping, condensers, water heating equipment, and materials. The parties dispute ownership of some of the liquidated assets. Argonaut submitted declarations demonstrating C&K owned everything sold during the liquidation of the Storefront. Danoff argues that while C&K may have believed it owned the liquidated items, many items were actually owned by Danoff as of October 2003 when Danoff purchased the Storefront from Crest Net. Additionally, some tiles, drywall, and flooring of the Storefront were damaged during the policy period. Argonaut submitted evidence demonstrating the above damage was ordinary wear and tear.

Danoff, as the loss payee, made a claim under the Agreement in December 2013. C&K, the insured, denied it sustained any covered loss and made no claim under the Agreement.

2 – OPINION AND ORDER

Argonaut adjusted Danoff's claim, including taking examinations under oath of Paul Danoff and two C&K representatives. Argonaut ultimately denied Danoff's claim.

During the bankruptcy proceedings, Danoff settled its claims with C&K. The sole remaining claims are Argonaut's claim for declaratory relief and Danoff's claim alleging Argonaut breached the Agreement by denying Danoff's claim.

## INSURANCE POLICY TERMS AND CONDITIONS

Argonaut issued commercial property coverage to C&K providing insurance for 79 different store locations. The Storefront is listed as property No. 60 and is identified as a warehouse. Lehner Decl. Ex. 6, 7. Under the Agreement, a loss payee is only entitled payment in "the event of loss or damaged covered" in the Agreement. The relevant portions of the policy state:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the declarations.
>
> ***
>
> A. Coverage.
>
> We will pay for direct physical loss of or damage to covered property at the premises described in the declarations caused by or resulting from any covered cause of loss.
>
> ***
>
> A. Covered Causes of Loss
>
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.
>
> B. Exclusions
>
> ***

3 – OPINION AND ORDER

1.  We will not pay for loss or damage caused by or resulting from
    any of the following:

                          ***

    d.(1)        Wear and tear;

                          ***

    h.  Dishonest or criminal act (including theft) by you, any of
        your partners, members officers, managers, employees
        (including temporary employees and leased workers),
        directors, trustees or authorized representatives, whether
        acting alone or in collusion with each other with any other
        party; or theft by any person to whom you entrust the
        property for any purpose, whether acting alone or in
        collusion with any other party.

                          ***

C.  Limitations

    The following limitations apply to all policy forms and endorsements
    unless otherwise stated:

1.  We will not pay for loss of or damage to property, as described and
    limited in this section. In addition, we will not pay for any loss that
    is a consequence of loss or damage as described and limited in this
    section.

                          ***

    d.  Building materials and supplies not attached
        as part of the building or structure, caused
        by or resulting from theft.

    e.  Property that is missing, where the only
        evidence of the loss or damage is a shortage
        disclosed on taking inventory, or other
        instances where there is no physical
        evidence to show what happened to the
        property.

4 – OPINION AND ORDER

> f.   Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Under "an 'all-risks' insurance policy, the insured's burden is limited. The insured need only show that a physical loss occurred to covered property." *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. CIV. 98-434-HU, 1999 WL 619100, at *3–4 (D. Or. Aug. 4, 1999). The insurer then has the burden of proof to show that any loss is excluded. *Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525, 527 (1977). Any and all "ambiguity in an exclusionary clause is strictly construed against the insurer." *Id.*

If "an insurance policy contains a loss-payable clause, the 'loss payee' does not claim as an assignee of the policy, but merely as an appointee to collect the insurance; consequently, he must claim in the right of the insured, and not in his own right. *Armbrust v. Travelers Ins. Co.*, 232 Or. 617, 621 (1962). Because it is not a party to the insurance contract, a loss payee may not recover absent any loss by the named insured. *Transp. Equip. Rentals Inc. v. Oregon Auto. Ins. Co.*, 257 Or. 294 (1970). As a result, Danoff's right to payment under the Agreement is derived from the rights of C&K under the Agreement. Contrary to Danoff's argument, demonstrating C&K suffered a covered loss is an "essential element" of its claim. *Id.* at 293. *Transportation Equipment* is both instructive and controlling on this issue.

In *Transportation Equipment*, A log loader was destroyed while in transport between the owner and the lessee. The policy named the owner as the loss payee and the lessee as the named insured. Although the lessee had an insurable interest in the loader, it suffered no loss in its destruction. Consequently, even though the owner of the loader suffered a loss, it could not recover as the loss payee under the policy because the insurer owed nothing to the insured lessee. *Id.* at 295.

The facts here are analogous to those in *Transportation Equipment.* Danoff owned the Storefront and no doubt suffered a loss when it was damaged. But "*it is the damage sustained by the party insured and not by the party appointed to receive payment that is recoverable from the insurer.*" *Id.* at 294 (quoting *Charles R. Allen, Inc. v. Rhode Island Ins. Co.*, 217 S.C. 296 (1950) (emphasis in original)). Like the lessee in *Transportation Equipment*, C&K suffered no damages. Danoff, as C&K's appointee, is entitled to nothing under the Agreement.

Danoff's argument supporting recovery under the policy fall into three broad categories: claims resulting from the liquidation of assets in the Storefront; claims related to unintentional

6 – OPINION AND ORDER

damage to the Storefront; and claims for lost business income. All these claims fail because
Danoff cannot establish that C&K could have claimed these same losses under the Agreement.

Danoff cannot recover for property damaged when C&K intentionally liquidated the
Storefront. First, if C&K liquidated the property knowing it belonged to Danoff, such an act
would constitute theft under ORS §164.015, and would fall outside of coverage due to being a
"dishonest or criminal act" by C&K. Second, even if C&K liquidated the property with an honest
but mistaken belief that it owned the property, Danoff's claim fails because C&K did not suffer
any loss. Danoff's proper remedy in that case is through a contract or tort claim against C&K,
not a commercial property coverage claim against Argonaut.[1] Third, C&K may have owned all
the liquidated property, in which case neither it nor Danoff suffered any damages.[2]

Danoff also seeks to recover physical damage to the Storefront including damage to the
flooring, tiling, drywall, and a sliding glass door. Argonaut presented evidence demonstrating
that these damages were ordinary wear and tear. Lehner Decl., Ex. 2, 16–17.[3] Danoff failed to
rebut that evidence. The Agreement specifically excludes coverage for ordinary wear and tear.
Lehner Decl. Ex. 6, 36. Danoff is not entitled to recover for these alleged damages.

Finally, Danoff seeks to recover rental income it lost due to damage to the Storefront.
The Agreement's Business Income Coverage Form provides that Argonaut "will pay for the loss

---

[1] As noted, Danoff settled all claims against C&K during C&K's bankruptcy proceedings.

[2] C&K submitted evidence demonstrating it owned all of the liquidated property. Lehner Decl. Ex. 2, 9-13, 15.
Danoff failed to rebut that evidence. Danoff's submission of the June 2001 architectural and mechanical plans for
the Storefront fails to create a genuine issue of material fact as to whether Danoff owned any of the liquidated
property. The Storefront changed hands between C&K building it in 2001 and Danoff purchasing it from Crest Net
in 2003. And there is no evidence the property on the plans was ever actually in the Storefront, either in 2003 or
2001. Danoff admitted to never setting foot inside the Storefront, and never having an inventory prepared of
equipment or fixtures included in the sale before purchasing it in 2003 from Crest Net. Lehner Decl. Ex. 5, 8, 10.
Unlike C&K, Danoff did not keep careful inventory records of the Storefront for depreciation on taxes. Finally, C&K
used its inventory records to keep track of property sold at the liquidation auction.

[3] Although Danoff argues that admission of statements by C&K employees related to wear and tear is hearsay, FRE
801(d)(2) provides that opposing party statements are not hearsay.

of Business Income you sustain . . . ." Lehner Decl. Ex. 6, 25. That form also provides, "Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations." *Id.* As Danoff is not a named insured, the Agreement does not cover Danoff's lost rental income.

## **CONCLUSION**

The Agreement names Danoff as a loss payee in the event of a covered loss. Here, C&K suffered no covered loss. Accordingly, Danoff's motion for summary judgment, ECF No. 17, is DENIED, and Argonaut's motion for summary judgment, ECF No. 12 is GRANTED. [4]

IT IS SO ORDERED.

DATED this 12th day of May, 2016.


_____/s/ Michael McShane_____
Michael McShane
United States District Judge

---

[4] Because Danoff cannot recover for the damages claimed in this case, Danoff's bad faith and interference claims fail as a matter of law.

8 – OPINION AND ORDER